THE GEO. E. BERRY.[1]

TOWN OF PELHAM v. THE GEO. E. BERRY.

(District Court, S. D. New York.  November 16, 1885.)

1. WHARFAGE—INCLUDES WHAT.
    Wharfage, in its most general legal sense, includes the mooring of vessels for the purposes of protection and safety, as well as for loading and unloading the cargo.

2. SAME—VESSEL ALMOST DESTROYED BY FIRE MAY BE LIABLE FOR.
    The schooner B. had been seriously injured by the burning of her cargo of lime; her decks, many of her beams, and her masts had been burned away, and in that condition she was fastened to a wharf, belonging to the town of Pelham, so that she floated at high water, and at low tide was nearly or quite out of water. Held, that she had not ceased to be a vessel so as to be legally subject to possible claims for wharfage.

3. SAME—TOWN WHARF USED FOR PRIVATE PURPOSES—TOWN ORDINANCE.
    The schooner had been given to H. for repairs. H. tied her to the wharf owned by libelant, near his ship yard, and which he sometimes used for his convenience in repairing vessels. Held, that as the ordinance of the town only referred to vessels engaged in navigation, or in loading or unloading their cargoes, and as no charge for wharfage could be collected except under an ordinance, wharfage in this case accrued only so far as the wharf was used by H. as a place for safely mooring the schooner, and for discharging and preserving what was aboard, for which $35 was allowed; so far as he used the wharf as a mere adjunct to his ship-yard, wharfage under the ordinance did not accrue.

[1] Reported by R. D. & Edward G. Benedict, Esqs., of the New York bar.

In Admiralty.

*Dudley R. Horton,* for libelant.

*Scudder & Carter,* for respondents.

BROWN, J. The libel in this case was filed to recover wharfage against the schooner George E. Berry, for the space of 35 days, while she was lying alongside the libelant's pier at City island. At the time the alleged wharfage accrued the schooner was known as the Bowdoin. She had had a cargo of lime, from which she had taken fire, and had been very seriously burned in the interior, and was taken in charge by Hawkins for the purpose of being repaired at his ship-yard at City island, which immediately adjoins the libelant's dock. She was brought along the southerly side of the pier, and run aground at about high water, and was fastened by a stern line to the pier, and by an anchor from the bows running beneath the wharf. As thus left she floated at high tide, but keeled over away from the dock as the water went down, and at low water was nearly, or quite, out of water, according as tides were high or low. Her decks had been burned out by the fire, many of her beams burned, and her masts were gone. Such of her cargo as was worthless was thrown overboard. Whatever was found valuable in emptying her was put upon the dock by Hawkins and carted away. After she was emptied she was removed to his ways from one to two hundred feet distant.

Notwithstanding the great injury to the Bowdoin by fire, and the fact that she was not then in a navigable condition, I am of opinion that she had not ceased to be a vessel, so as to be legally subject to possible claims for wharfage. The cases cited by claimant's counsel of floating docks, rafts, etc., do not seem to me analogous. So far as the wharf was used by Hawkins as a place for safely mooring the ship, and for discharging and preserving what was aboard of her while afloat, or in a position to which she was brought afloat for the purpose of discharge, I think wharfage, in the proper sense of that term, must be held to have accrued.

On the other hand, so far as Hawkins makes use of the wharf, not for those or similar purposes, nor for any purpose of commerce, but as a mere adjunct to his ship-yard for his own convenience while repairing vessels, wharfage proper, and in the sense of the ordinance of the town of Pelham, does not accrue. See *Town of Pelham* v. *The B. F. Woolsey,* 16 Fed. Rep. 418, 423, and cases cited; *Taylor* v. *Mutual Ins. Co.,* 37 N. Y. 275. Wharfage in its most general legal sense doubtless includes the mooring of vessels for the purposes of protection and safety, as well as for loading and unloading the cargo. The town may therefore lawfully impose a charge as for wharfage for any use as a place of mooring only by Hawkins, even in connection with his ship-yard and business. The general ordinance passed by the town, however, must be construed to refer to vessels engaged in navigation, or in loading or unloading some parts of their contents, as the context, I think, evidently implies. As no charge can be collected, ex-

cept that established under an ordinance, some further action of the
town is necessary to cover the use of the wharf by Hawkins as a mere
place of security and convenience, and as a mere adjunct to his ship-
yard.   The amount of use made of the dock by Hawkins in this case
for the purpose of discharging what was on board is not easy to de-
termine.   There are various indications that it was somewhat less
than half the time claimed in this suit.   Under the circumstances
I shall award the libelant $35 as the nearest approximation I can
arrive at for the uses covered by the ordinance.   Decree for the libel-
ant for $35 dollars and costs.